*In re* BECK

Docket No. 293138. Submitted January 6, 2010, at Detroit. Decided
    March 4, 2010, at 9:10 a.m.

   The parental rights of Lawrence M. Beck to his two minor children
       were terminated pursuant to an order entered in the Oakland
       Circuit Court, Family Division, Martha D. Anderson, J. The order
       also required Beck to continue to provide child support for the
       children. Beck filed in the Court of Appeals a delayed application
       for leave to appeal, contending that his due process rights were
       violated by the part of the order regarding his continuing obliga-
       tion to pay child support. The Court of Appeals granted the
       application.

   The Court of Appeals *held*:

   The responsibility to pay child support and the retention or
   exercise of parental rights are not interdependent. A child pos-
   sesses the inherent and fundamental right to receive support from
   a parent. This ongoing right to financial support constitutes a
   right independent of a parent's retention or exercise of his or her
   parental rights. Public policy dictates that involuntary termina-
   tion of parental rights does not automatically extinguish the
   parental responsibility of paying child support. Absent adoption,
   an order terminating a parent's parental rights does not terminate
   that parent's obligation to support his or her minor children.

   Affirmed.

PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — PARENTS' OBLIGATION
    TO SUPPORT MINOR CHILDREN.

   Absent adoption, an order terminating a parent's parental rights
   does not terminate that parent's obligation to support his or her
   minor children.

*Jessica R. Cooper*, Prosecuting Attorney, *John S.
Pallas*, Chief, Appellate Division, and *Thomas R.
Grden*, Assistant Prosecuting Attorney, for the Depart-
ment of Human Services.

*Nancy A. Plasterer* for Lawrence M. Beck.

Before: DAVIS, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM. We granted respondent's delayed application for leave to appeal a trial court order that terminated his parental rights to the subject minor children pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), and that also ordered respondent to continue to provide financial support for the minor children. We affirm.

Respondent is divorced from the children's mother, who retained custody of the children after respondent's parental rights were terminated. Respondent does not challenge the trial court's decision to terminate his parental rights, but argues that the trial court violated his due process rights by providing in the termination order that his "[c]hild support and other support for the children shall continue."

"Both the Michigan Constitution and the United States Constitution preclude the government from depriving a person of life, liberty, or property without due process of law." *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005). "Parents have a significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process." *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003).

"The essence of due process is 'fundamental fairness.' " *In re Adams Estate*, 257 Mich App 230, 233-234; 667 NW2d 904 (2003) (citation omitted). There are two types of due process: procedural and substantive. *By Lo Oil Co v Dep't of Treasury*, 267 Mich App 19, 32-33; 703 NW2d 822 (2005). The fundamental requirements of procedural due process are notice and a meaningful opportunity to be heard before an impartial decision

maker. *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 213-214; 761 NW2d 293 (2008). "[T]he essence of a substantive due process claim is the arbitrary deprivation of liberty or property interests." *Id.* at 201 (emphasis omitted). A person claiming a deprivation of substantive due process "must show that the action was so arbitrary (in the constitutional sense) as to shock the conscience." *Id.* at 200.

Although respondent frames his issue as implicating his right to due process, apart from simply asserting that his due process rights were violated, he does not explain how the trial court's decision resulted in a denial of due process pursuant to the above standards. The issue whether respondent may continue to be liable for child support after his parental rights have been terminated appears to be a straightforward question of law, which is reviewed de novo on appeal. *Minority Earth Movers, Inc v Walter Toebe Constr Co*, 251 Mich App 87, 91; 649 NW2d 397 (2002).

MCL 712A.19b permits a court to terminate "parental rights," but is silent regarding parental responsibilities. "This Court gives effect to the Legislature's intent as expressed in the statute's terms, giving the words of the statute their plain and ordinary meaning." *McManamon v Redford Charter Twp*, 273 Mich App 131, 135-136; 730 NW2d 757 (2006). When the language poses no ambiguity, this Court need not look outside or construe the statute, but, rather, need only enforce the statute as written. *Id.* at 136. "We cannot read requirements into a statute that the Legislature did not put there." *Empire Iron Mining Partnership v Orhanen*, 455 Mich 410, 423; 565 NW2d 844 (1997).

Had the Legislature intended that a termination of "parental rights" would also include a termination of "parental responsibilities", such as the responsibility of

a parent to pay child support, it could have used specific language to convey that intent. Moreover, rights and responsibilities are separate and distinct concepts. A "right" is a "power, privilege, or immunity secured to a person by law." Black's Law Dictionary (7th ed). A "responsibility," on the other hand, is a "liability." *Id.* The responsibility to pay child support and the retention or exercise of parental rights are not interdependent. Michigan law does not, for example, unequivocally hold (nor would it be in the best interest of a child to do so) that a fit parent should be prevented from visitation with his or her child simply because the parent is unable to pay child support.

Here, in the context of parent-child relationships, there are actually two distinct rights at issue. While, as previously stated, a parent has a legal right to the companionship, care, custody, and management of his or her children, *In re JK*, 468 Mich at 210, "[i]t is well settled that children have the right to receive financial support from their parents and that trial courts may enforce that right by ordering parents to pay child support," *Borowsky v Borowsky*, 273 Mich App 666, 672-673; 733 NW2d 71 (2007). That right cannot be bargained away by the parents, *Laffin v Laffin*, 280 Mich App 513, 518; 760 NW2d 738 (2008), and, "[a]bsent adoption, the legal obligation to support a child remains with his natural parents." *Wilson v Gen Motors Corp*, 102 Mich App 476, 480; 301 NW2d 901 (1980). Thus, a child possesses the inherent and fundamental right to receive support from a parent. This ongoing right to financial support constitutes a right independent of a parent's retention or exercise of his or her parental rights.

Pursuant to MCL 722.3(1), a child's parents "are jointly and severally obligated to support a minor as

prescribed in . . . MCL 552.605, unless a court of competent jurisdiction modifies or terminates the obligation or the minor is emancipated by operation of law, except as otherwise ordered by a court of competent jurisdiction." This Court in *Bradley v Fulgham*, 200 Mich App 156, 159; 503 NW2d 714 (1993), held that termination of a parent's parental rights pursuant to a voluntary release under the Adoption Code extinguishes the obligation to pay child support.[1] This Court subsequently held in *Evink v Evink*, 214 Mich App 172, 176; 542 NW2d 328 (1995), though, "that in the absence of a clear legislative directive stating otherwise, where a biological parent voluntarily releases parental rights to the children and custody remains with the other biological parent, the termination of parental rights does not terminate the parent's obligation to support the child." We find no appreciable difference between a voluntary and an involuntary termination insofar as the legal effect of the order is concerned. A parent's rights are no less terminated when the termination is voluntary rather than involuntary.

Public policy further dictates a holding that involuntary termination of parental rights does not automatically extinguish the parental responsibility of paying child support. First, the objectives of a termination of parental rights proceeding are to protect the child, *In re Johnson*, 142 Mich App 764, 765; 371 NW2d 446 (1985), and to provide permanence and stability to a child's life. Eliminating the benefit of child support after a termination of parental rights does not assist in protecting the child from any harm emanating from the prior parental relationship; instead, it denies the child benefits that are based on the child's needs and the

---

[1] This case does not involve a voluntary release of parental rights under the Adoption Code.

parent's ability to pay. That the duty to pay child support survives a termination of parental rights also fosters the goal of creating stability and permanency in the life of a child.

Second, as noted in *State v Fritz*, 801 A2d 679, 684-685 (RI, 2002), "[a]bsent an adoption, terminating support from one parent necessarily places the full financial responsibility on the other parent, often with assistance from the state." In these times of difficult financial circumstances, policy considerations support the avoidance of unnecessarily creating further financial burdens on the government, or its individual citizens.

Finally, if a judgment involuntarily terminating parental rights automatically discharges a parent from responsibility for child support, it could potentially lead to results detrimental to the child's welfare. It may, for example, force a parent to forgo reporting the abusive or neglectful behavior of a coparent in order to preserve a child's right to receive financial support. It may also provide a vehicle for the avoidance of a support obligation by a parent; an irresponsible parent could quickly realize that he or she could escape liability for child support by abusing or neglecting their child.

In order to effectuate the statutory scheme by which the rights and responsibilities of parents and children are governed, and to avoid potentially detrimental or injurious consequences, we hold that, absent adoption, an order terminating a parent's parental rights does not terminate that parent's obligation to support his or her minor children. Accordingly, we affirm the trial court's order requiring respondent to continue to pay child support despite the termination of his parental rights.

Affirmed.