*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SCORPIO JOSHUA LENOIR,

        Defendant-Appellant.

UNPUBLISHED
February 6, 2020

No. 345029
Genesee Circuit Court
LC No. 16-039503-FC

Before: CAMERON, P.J., and SHAPIRO and SWARTZLE, JJ.

PER CURIAM.

Defendant pleaded guilty to manslaughter, MCL 750.321, and carrying a firearm during the commission of a felony (felony-firearm), second offense, MCL 750.227b, and was sentenced as a second-offense habitual offender to serve consecutive sentences of 5 to 22.5 years' imprisonment for manslaughter and 5 years' imprisonment for felony-firearm. He appeals by leave granted. We affirm.

## I. BACKGROUND

This case arises from the shooting death of Sam Ivy. At around 10:00 p.m., defendant was driving through an intersection where several people were standing when gunshots were fired at his car. Defendant was struck in the arm and fired his own gun in response. In doing so, defendant shot Ivy several times in the chest.

The felony information charged defendant with open murder, MCL 750.316, possession of a firearm by a felon (felon-in-possession), MCL 750.224f, carrying a concealed weapon, MCL 750.227, and felony-firearm, MCL 750.227b. He was arrested and later released on bond with a GPS tether. On February 23, 2017, he entered into a plea agreement under which he pleaded guilty to manslaughter and felony-firearm in exchange for dismissal of the other charges. The trial court accepted defendant's plea on that date. The prosecution did not agree to recommend a particular sentence. On counsel's request, the court allowed removal of defendant's tether so that he "could go down to Pontiac with the understanding that he is not to come to Genesee County" for reasons other than appearances in court or the probation department.

Defendant asserts that his plea was entered as part of a *Cobbs*[1] agreement in which the trial court agreed to sentence him to a combined minimum term of five years imprisonment. Whether or not there was a *Cobbs* agreement is difficult to discern from the record. The plea transcript does not contain any mention of a *Cobbs* agreement as such, but the court does refer to the "proposed sentence" and advises defendant that if he violates the court's orders set forth in his bond, the "proposed sentence" will be rejected.

On April 24, 2017, the date originally set for sentencing, defense counsel advised the court that defendant had not been taking his medications and was not in a sound state of mind; counsel requested a one-week adjournment so that defendant could go to Havenwyck for a "review." The trial court agreed and told defendant that he should not abscond "because there was a proposal, I believe, for a particular sentence. I will not be bound by that and you will not have the right to withdraw the plea." The court also stated, "If you do not [adhere to the bond requirements], I will regard it as misconduct under our rule and you will not be able to withdraw your plea and I can give you any sentence I believe is appropriate."

On May 1, 2017, the court heard a prosecution motion to revoke bond alleging that defendant had come to Genesee County and that he failed to admit himself to Havenwyck. Defendant did not deny these assertions and the trial court revoked bond without taking testimony concerning the alleged violations. The court also ordered a competency evaluation.

On June 26, 2017, the court held a hearing as to defendant's competency and concluded, without defense objection, that he was competent for sentencing and was taking his medications at the jail. The prosecutor reminded the court that it "had mentioned before since this defendant violated the terms that the Court gave him that the Court wasn't inclined to follow the *Cobbs*." The court did not correct the prosecution's statement that there was a *Cobbs* agreement and stated that it would "give the People the opportunity to file a motion to attempt to persuade me not to go along with this proposal" and that "the only issue in front of me right now is whether or not I'm, [(1)] going to go along with the deal, [(2)] able to reject the deal and not allow plea withdrawal." The court further stated that "if I am persuaded by the People that I can reject the proposal and not allow him plea withdrawal, then he can be sentenced above the five years that have been contemplated."

On August 17, 2017, the prosecutor filed a motion requesting that the trial court find that defendant forfeited his "sentencing agreement." Relying on MCR 6.310(B)(3), the prosecutor argued that defendant was not entitled to the benefit of the sentencing agreement or to withdraw his plea because he committed misconduct before sentencing. At sentencing, the trial court concluded that it was no longer obligated to consider defense counsel's request to limit defendant's sentence to a definite five-year term because defendant committed misconduct by violating his bond conditions.

Defendant obtained appellate counsel and in February 2018 filed a motion "to enforce the sentencing agreement or, in the alternative, to correct an invalid sentence or, in the alternative to withdraw his plea." Defendant argued that the sentencing agreement should be enforced because

---

[1] *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993).

the prosecutor did not offer any proof regarding his alleged presence in Genesee County. Defendant alternatively argued that he only pleaded guilty to felony firearm as a first offense or that he was entitled to withdraw his plea because he did not know that he was being charged with a second offense at the time the plea agreement was executed. After hearing oral argument, the trial court denied defendant's motion. In a written order, the court found that there was sufficient misconduct to reject the "sentence proposal" and to deny defendant's motion to withdraw his plea. Further, the trial court noted that defendant elected not to request an evidentiary hearing on whether he was aware that he would be sentenced to a mandatory five-year term for the felony-firearm charge when he entered his plea.

## II. DUE PROCESS

Defendant first argues that the trial court revoked his bond without providing him sufficient due process. Specifically, defendant contends that because the alleged bond violations resulted in revocation of his sentencing agreement he was entitled to an evidentiary hearing to determine if he had in fact violated the terms of his bond. The prosecutor agrees that had defendant contested the factual allegations, he would have been entitled to an evidentiary hearing but argues that his trial counsel waived that right. We agree with the prosecution that defendant waived appellate review of this issue; alternatively, he fails to establish plain error affecting substantial rights.[2]

The right to procedural due process is encompassed by both the federal and state constitution. *Kampf v Kampf*, 237 Mich App 377, 381-382; 603 NW2d 295 (1999). US Const, Am XIV; Const 1983, art 1, § 17. "Procedural due process involves the fairness of procedures used by the state that result in the deprivation of life, liberty, or property." *People v Bosca*, 301 Mich App 1, 73; 871 NW2d 307 (2015).

Defendant was provided the fundamental requirements of due process, i.e., notice and an opportunity to be heard, *In re Beck*, 287 Mich App 400, 401-402; 788 NW2d 697 (2010), before his bond was revoked. He received a written motion to revoke his bond, and a bond revocation hearing was held to address that motion. Defendant maintains that he received inadequate notice because the prosecutor's motion to revoke did not inform him of the specific allegations regarding his appearance in Genesee County.[3] He also contends that the prosecutor was required to offer evidence in support of its allegations at a formal hearing, and that he should have been able to cross-examine any witnesses called by the prosecutor. However, defendant's trial counsel either waived or failed to preserve these arguments.

---

[2] We review questions of constitutional law de novo. See *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). However, we review unpreserved issues for plain error affecting substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

[3] While the prosecutor filed proof of service of the motion to revoke, it appears that the motion itself was not filed. Therefore, we can neither confirm nor deny defendant's assertion. However, we note that defendant's argument indicates that he was informed of the allegation that he appeared in Genesee County, which he has at no time disputed.

Trial counsel agreed to proceed with the bond revocation hearing despite what defendant now asserts was inadequate notice. At the revocation hearing, the prosecutor made an offer of proof that the victim's family reported seeing a video on Facebook of defendant in Flint with his girlfriend and that a state trooper had seen defendant in the Flint area after receiving a "ping" result from the GPS on defendant's phone. The state trooper who saw defendant in Genesee County was present in the courtroom, presumably, to offer testimony regarding his observations if necessary. However, trial counsel did not oppose the prosecutor's motion to revoke or request that the prosecutor introduce proofs regarding the underlying allegations. Waiver is the "intentional relinquishment or abandonment of a known right," and it extinguishes a claim of error on appeal. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). We agree that defendant would have been entitled to a hearing had he opposed the motion or contested the factual allegations. Even though a defendant's procedural rights at a bond revocation hearing have not been delineated in this state, trial counsel could have requested that the prosecutor offer proofs at the hearing, but chose not to do so. And counsel could also have requested an evidentiary hearing prior to sentencing so that the court could make factual findings based on evidence given that the violation of the bond conditions was used to revoke the trial court's agreement to impose the sentence recommended by defense counsel and so directly affected the term of incarceration defendant received.[4]

Assuming that this issue was not waived, defendant fails to show plain error affecting substantial rights. See *id*. at 216 (explaining that failure to object constitutes forfeiture of an issue, resulting in plain-error review).[5] Plain-error review requires a showing of prejudice, i.e., that the error affected the outcome of the proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Defendant has not asserted, either on appeal or in the trial court, that he did not appear in Genesee County in violation of his bond conditions. Accordingly, he fails to provide any basis from which to conclude that a different outcome could have resulted from an evidentiary hearing.

---

[4] Defendant argued in his postsentencing motion that the trial court erred in accepting the prosecution's factual representations concerning the bond violations but did not argue or make an offer of proof to support an argument that he did not violate the conditions of his bond. Nor does he make such a claim in his brief on appeal or request that we remand the case so that the court could conduct an evidentiary hearing as to the alleged bond violations.

[5] Defendant asserts that he preserved the due-process argument in his postsentencing motion. However, while defendant argued that the sentencing agreement should not have been withdrawn in the absence of proofs, he did not assert a protected liberty interest in the sentencing agreement or claim that the lack of proofs violated his right to due process. Thus, even assuming that his postsentencing motion adequately preserved arguments relating to the revocation proceedings, this specific issue was not preserved for appellate review. *People v Wiley*, 342 Mich App 130, 150; 919 NW2d 802 (2018) ("To be preserved for appellate review, an issue must be raised before and addressed by the trial court.").

III. *COBBS* AGREEMENT

Defendant next argues that the trial court erred in denying his motion to enforce the sentencing agreement, or alternatively, not allowing him to withdraw his plea. We disagree.[6]

MCR 6.310(B)(2) provides that a defendant is entitled to withdraw a plea if

> (a) the plea involves an agreement for a sentence for a specified term or within a specified range, and the court states that it is unable to follow the agreement; the trial court shall then state the sentence it intends to impose, and provide the defendant the opportunity to affirm or withdraw the plea; or

> (b) the plea involves a statement by the court that it will sentence to a specified term or within a specified range, and the court states that it is unable to sentence as stated; the trial court shall provide the defendant the opportunity to affirm or withdraw the plea, but shall not state the sentence it intends to impose.

MCR 6.310(B)(2)(a) refers to an agreement between the defendant and the prosecution; MCR 6.310(B)(2)(b) pertains to an agreement between the defendant and the trial court, also known as a *Cobbs* agreement. A defendant is not entitled to withdraw a plea pursuant to MCR 6.310(B)(2) "if the defendant commits misconduct after the plea is accepted but before sentencing." MCR 6.310(B)(3).

As an initial matter, the parties dispute whether defendant's plea agreement involved a sentencing or a *Cobbs* agreement. This issue is complicated by the fact that there are numerous references to both types of agreements in the lower court record. However, the plea agreement that was entered into the record does not indicate that the prosecution had agreed to any particular sentence or sentence range and the prosecutor maintains that there was merely a sentencing proposal made by defense counsel. Thus, we conclude that there was not a sentencing agreement as contemplated by MCR 6.310(B)(2)(a).

It is less clear whether there was a *Cobbs* agreement. The trial court did not state on the record at the plea hearing that it would sentence defendant to a specific term, but it indicated that it would sentence defendant consistent with his counsel's proposal. Further, at the hearing on defendant's motion, the court stated that "the record is replete that that's what the agreement was," i.e., defendant would receive five years for the felony firearm conviction and "no time" on the manslaughter conviction. Thus, it appears that for all intents and purposes the trial court agreed to sentence defendant consistent with his counsel's proposal. Relying on *People v Cadarette*, 480 Mich 900 (2007), defendant argues that this "off-the-record" agreement is tantamount to a *Cobbs* agreement. We need not definitively decide this issue for two reasons. First, the prosecutor and the trial court proceeded as if either MCR 6.310(B)(2)(a) or (b) was applicable, otherwise the

---

[6] We review de novo the interpretation of court rules. *People v Blanton*, 317 Mich App 107, 117; 894 NW2d 613 (2016). A trial court's factual findings are reviewed for clear error. *People v Mazzie*, 326 Mich App 279, 288; 926 NW2d 359 (2018).

reliance on MCR 6.310(B)(3) would have been unnecessary. Second, assuming that there was a *Cobbs* agreement, we conclude that the trial court did not err in revoking that agreement on the basis that defendant committed misconduct under MCR 6.310(B)(3).[7]

Defendant argues that there was not sufficient evidence of misconduct to implicate MCR 6.310(B)(3). That subrule defines "misconduct" to include "absconding or failing to appear for sentencing, violating terms of conditions on bond or the terms of any sentencing or plea agreement, or otherwise failing to comply with an order of the court pending sentencing." MCR 6.310(B)(3).

Defendant argues that his failure to attend Havenwyck for treatment did not warrant withdrawal of his *Cobbs* agreement because he fulfilled the intent of that bond condition by seeking alternative treatment. However, the trial court did not base its finding of misconduct solely or even primarily on this event.[8] The court made clear that defendant's appearance in Genesee County was the misconduct that led to revocation of his bond and eventually the *Cobbs* agreement. And, as discussed, defendant does not assert that he did not violate the conditions of his bond by appearing in Genesee County; rather, he maintains that the prosecutor should have presented proof in support of that allegation at a formal hearing. But because trial counsel did not oppose the motion to revoke, no such hearing was required. For those reasons, the trial court did not err in finding that defendant committed misconduct as defined by MCR 6.310(B)(3) and that he was therefore not entitled to withdraw his plea.

Defendant also argues that the trial court erred in not allowing him to withdraw his plea because the conditions he violated were not in existence at the time he entered his plea. Defendant relies on *People v McCormick*, unpublished per curiam opinion of the Court of Appeals, issued October 29, 2015 (Docket No. 322138), in which this Court "held that because defendant's

---

[7] We remind the trial court that if it agrees to a particular sentence or sentence range as part of a defendant's plea agreement it constitutes a *Cobbs* agreement. If the court is entering into such an agreement it must make it clear in the record. If the court does not wish to be so bound despite a request for such an agreement, it must make its refusal to enter into a *Cobbs* agreement clear in the record. If the court enters into a *Cobbs* agreement and defendant does not forfeit that agreement by engaging in misconduct, MCR 6.310(B)(3), it must follow it or allow for plea withdrawal, MCR 6.310(B)(2)(b). If the court is not entering into a *Cobbs* agreement, it is at liberty to impose any sentence within its discretion. The court should avoid creating or referring to sentence "proposals" or "agreements" that are not explicitly *Cobbs* agreements or sentence recommendations from the prosecution made as part of a plea agreement between the parties.

[8] Specifically, at the hearing for defendant's postsentencing motion, the trial court stated,

> Well, did I say I'm not going along with it just because he didn't get into Havenwyck? I can't imagine myself saying you didn't get into Havenwyck. You tried and Havenwyck [w]as full, but technically you didn't get into Havenwyck, so I'm finding misconduct. Did I limit it to that?

The court was then reminded that defendant also violated his bond conditions by appearing in Genesee County.

misconduct in jail did not violate a specific condition of the plea agreement or *Cobbs* evaluation, that misconduct did not constitute a waiver of the right to withdraw his guilty pleas." *McCormick*, unpub op at 4. *McCormick* is not binding precedent, MCR 7.215(C)(1), but even if we found its reasoning persuasive, it was effectively overruled by the adoption of MCR 6.310(B)(3),[9] which does not limit misconduct to conditions or orders that existed at the time of the sentencing agreement was made.

## IV. PLEA

Finally, defendant argues that he was entitled to withdraw his plea because it was not knowing and voluntary. We conclude that the trial court did not abuse its discretion in denying defendant that relief.[10]

A court may accept a guilty plea only if "it is convinced that the plea is understanding, voluntary, and accurate." MCR 6.302(A). "In order for a plea to be voluntary and understanding, the defendant must be fully aware of the direct consequences of the plea." *People v Blanton*, 317 Mich App 107, 118; 894 NW2d 613 (2016) (quotation marks and citation omitted). Therefore, before it accepts a plea, a court must advise the defendant directly of "the name of the offense to which the defendant is pleading," MCR 6.302(B)(1), and "the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law," MCR 6.302(B)(2).

Defendant argues that his plea was not knowing and voluntary because he was not informed that he was pleading guilty to felony-firearm as a second offense until after he signed the plea agreement. The initial felony complaint indicated that felony-firearm carries a two-year sentence, and did not explicitly list the mandatory enhancement for subsequent offenses under MCL 750.227b. The written plea agreement also did not indicate that felony-firearm was charged as a second offense, which requires a mandatory five-year sentence. However, defendant was informed that he was being charged with a second offense at the plea hearing. Further, defendant acknowledges that the *Cobbs* agreement was for five years on the felony-firearm charge. He argues that this is not dispositive because it was never stated on the record that the five years pertained to felony firearm. However, defendant did not follow up on the trial court's offer to hold an evidentiary hearing to determine whether defendant was aware of the five-year mandatory sentence for the felony firearm charge. Under those circumstances, the trial court did not abuse its discretion in denying defendant's motion to withdraw his plea.

Affirmed.

/s/ Thomas C. Cameron
/s/ Douglas B. Shapiro
/s/ Brock A. Swartzle

---

[9] MCR 6.310(B)(3) became effective January 1, 2014. See *People v Martinez*, 307 Mich App 641, 649 n 5; 861 NW2d 905 (2014).

[10] "We review for an abuse of discretion a trial court's ruling on a motion to withdraw a plea." *People v Pointer-Bey*, 321 Mich App 609, 615; 909 NW2d 523 (2017).